# Chicago & Grand Trunk Railway Company v. Isaiah C. Smith.

# Chicago City Railway Company v. Isaiah C. Smith.

### Gen. Nos. 12,295, 12,296.

#### CONSOLIDATED FOR HEARING.

1. NEGLIGENCE—*when carrier guilty of.*  A conductor who fails to proceed sufficiently in advance of his car so as to warn his

driver in time of the approach of a train upon the railroad cross-ing tracks about to be crossed, is guilty of negligence notwithstand-ing the crossing gates may have been open; likewise, is the driver of such car guilty of negligence who follows such conductor with his car so closely as not to be able to avail of a warning if given.

2. Negligence—*when railroad company guilty of.* A railroad company is guilty of negligence in running a train within the cor-porate limits of a city at a high rate of speed where it appears that at the street crossing upon which the plaintiff was injured cross-ing gates and gateman were maintained by such company and the danger arising from the approach of such train was not made known to the plaintiff either by the lowering of the gates or the giving of any signal.

3. Contributory negligence—*when passenger not guilty of.* A passenger is not guilty of contributory negligence as a matter of law who sits in a car reading while the same is about to cross rail-road tracks, if there is nothing to warn him of danger.

4. Instructions—*when cannot be complained of.* One of sev-eral defendants in an action for personal injuries cannot complain that an instruction pertaining to him does not exclude his co-de-fendant from liability.

5. Instructions—*test of determining whether, are misleading.* In determining whether particular instructions mislead the jury, the court will credit the jury with common discernment and com-mon sense.

6. Instructions—*when not duty of court to give.* It is not the duty of the court to give instructions upon his own motion; and a party who has not asked any instruction upon a particular point cannot complain that the cause was submitted to the jury upon insufficient instructions.

7. Preponderance of evidence—*when instruction as to, not im-proper.* An instruction upon this subject is not improper which tells the jury that the burden of proof is on the plaintiff and that if the evidence bearing on his case "preponderates in his favor al-though but slightly, it would be sufficient for the jury to find the issues in his favor."

8. Remarks of counsel—*what essential to reversal because of.* Unless the court can see that the remarks of counsel objected to were clearly prejudicial, a reversal will not follow.

9. Verdict—*what cured by.* The failure of the plaintiff to allege that he was in the exercise of due care is such a defect of pleading as is cured by verdict.

Action on the case for personal injuries. Appeals from the Su-perior Court of Cook County; the Hon. Axel Chytraus, Judge, pre-siding. Heard in this court at the March term, 1905. Affirmed. Opinion filed March 1, 1906.

**Statement by the Court.**   Appellee, to recover damages for injuries, brought an action against these appellants jointly, and obtained a judgment against both.   Separate appeals were perfected to this court.   The cases were consolidated for hearing upon the same record and abstract.   Appellants filed separate briefs.   Appellee filed one brief in answer to those of appellants.   The Chicago & Grand Trunk Railway Company hereafter will be called the Grand Trunk and the Chicago City Railway Company the Street Railway.

The accident complained of happened between five and six p. m. of July 17, 1893, on Halsted street at or near its intersection with 49th street in the city of Chicago.   Halsted street runs north and south.   In it the Street Railway was then operating a double track horse car line.   The southbound cars ran in the west track and the north-bound cars in the east track.

At or near 49th street Halsted street is crossed in an east and west direction by four steam railway tracks.   The two tracks to the north are owned and operated by the Chicago Junction Railway Company.   These tracks are about seven feet apart.   South of them and separated from them by an interval of from 16 to 30 feet are two tracks owned by the Chicago & Western Railway Company, over which appellant, the Grand Trunk, was then operating its trains.   These two tracks lay within 7 feet of each other.   Over the north one of these tracks the Grand Trunk ran its west-bound trains, and over the south one its east-bound trains.   West of Halsted street these tracks run straight for at least two miles. The station house was situate south of all the tracks and west of Halsted street.   In the space between the two sets of tracks, and just west of Halsted street, stood a gate tower, the floor of which was 18 to 20 feet above the street level. North and south of these four tracks and within two or three feet of the nearest rail were gates which, when lowered, shut off travel over this crossing in and along Halsted street.   It was the duty of the watchman in the tower, who was an employee of the Grand Trunk, to close these gates when a train approached from the east or from the west, and to keep them

closed until the train had passed over the crossing and the way was again clear, when he raised them, thus permitting travel in and along Halsted street over this intersection. There was no flagman at this crossing. The only guard was the towerman, and the only signal he gave the public that the crossing was safe or was dangerous, was the act of opening or of closing these gates.

Appellee became a passenger at the time in question by boarding a south-bound horse car and paying his fare at 41st street, nearly a mile north of the scene of the accident. The car went on its way until it reached the north gate, and there stopped, that gate being down. At that time a freight train of from 30 to 40 cars, headed west, stood upon the north track of the two south tracks, the rear of the caboose resting six feet west of the west sidewalk on Halsted street, thus leaving that street clear, but cutting off the view to the southwest. There was no other obstruction to prevent one at the north gate from looking west along the Grand Trunk tracks for more than a mile. The street car conductor passed the gate, and when it was raised told the driver to come on. The latter did so, while the conductor walked along five or ten feet ahead of the horses. The evidence is conflicting upon the point as to whether or not the car stopped momentarily in the space between the two sets of tracks and then went on its way. They thus proceeded until the conductor reached the south Grand Trunk track, and the horses were upon or had passed over the north Grand Trunk track, when he cried out, "For God's sake stop." The driver exclaimed, "This is a hell of a time to stop," and whipping his horses attempted to cross over the south track. Before he could do so the rear of his car was struck by the engine of a Grand Trunk passenger train coming rapidly from the west along this south track. At that time the south gate was up. This train consisted of an engine and tender, a baggage car, and six day coaches and sleeping cars. Its length over all was from 460 to 500 feet. The train was brought to a stand still with the rear coach covering the crossing. There is evidence given by two locomotive engineers that such a train could be stopped within

300 to 400 feet when running 35 to 40 miles per hour; and within 175 to 225 feet when running 20 to 25 miles per hour.

The passenger train at the time it struck the street car was running at the rate of 20 to 25 miles per hour. Its speed in approaching this crossing was greater. The street car was an open one, the seats running clear across it. Appellee, when he boarded the car at 41st street, seated himself in the first or second seat from the rear of the car and there remained, faced to the south, reading a newspaper. While on the crossing there was a commotion, some one cried out, "There comes a train," and then the accident happened.

The case was first tried in 1897, and a judgment was rendered against appellants. An appeal was taken to this court. We dismissed the appeal for want of a complete transcript of the record and for lack of an assignment of errors upon the original transcript. Chicago C. Ry. Co. v. Smith, 82 Ill. App., 305. Afterwards the case was brought here upon a writ of error. In reversing the case we then said: "We need not to discuss the merits of the case, for it is insisted by the plaintiffs in error and is practically conceded by the defendant in error, that the bill of exceptions fails to connect the plaintiff in error, Chicago City Railway Company, with the accident or injury complained of, and that therefore the joint judgment against the two plaintiffs in error cannot stand, because not supported by the evidence. It is, perhaps, unnecessary to repeat the familiar doctrine that a joint judgment, improper as to one of two joint defendants, cannot be sustained as to the other defendant." Chicago City Ry. Co. v. Smith, 92 Ill., App., 153.

In the second trial, from which this appeal was taken, at the close of the evidence for appellee each appellant moved the court for a peremptory instruction to find it not guilty. The court denied these motions. Such motions were renewed at the close of all the evidence and were again denied.

The jury returned a verdict finding both appellants guilty and assessing appellee's damages at the sum of $35,000.

On the argument of the motion for a new trial, appellee remitted the sum of $20,000 from the damages as found by

the jury, and thereupon a joint judgment was entered against appellants for the sum of $15,000. Separate appeals followed.

G. W. KRETZINGER, and WILLIAM J. HYNES and WATSON J. FERRY (MASON B. STARRING, of counsel), for appellants.

THEODORE G. CASE, MUNSON T. CASE and SETH F. CREWS, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

A common carrier of passengers is required to do all that human care and foresight can reasonably do, consistent with the character and mode of conveyance adopted and the practical operation of its business, for the safety of its passengers. It was this duty which the Street Railway owed to appellee after he became its passenger and so long as he sustained that relation to it. C. & A. Ry. Co. v. Byrum, 153 Ill., 134, and cases cited.

. Tested by this rule, it is plain that the Street Railway employees in charge of this car were negligent. That the freight train standing on the north track shut off the view of the conductor to the southwest, from which direction trains running on the south track were in the habit of coming, was clear to any one present at the scene of the accident. The fact that the gates were up did not excuse the conductor from this strict rule of care. It was the duty of the conductor, before he permitted his car to get into dangerous proximity to that south track, to go south of the standing freight train to see if any train was approaching upon that track. The evidence tends to show that he did precede the horses by five to ten feet. If he did so, he did not look to the west as soon as he cleared the standing train; or, if he did, he did not call upon the driver to stop as soon as he saw or could have seen the approaching train. It was also negligence in the driver to follow the conductor so closely that when warned he could not stop in safety, or, if he did follow the conductor at a safe distance he was grossly careless in attempting to cross the track in the face of the

approaching train after he had been warned of its coming. Upon the merits appellee was entitled to a verdict against the Chicago City Railroad Company.

The evidence justified the jury in finding the Grand Trunk guilty of negligence which contributed to the injury of appellee. It had established and was operating crossing gates at this intersection for the protection of the public. It employed men, both night and day, whose sole business it was to close these gates upon the approach of a railway train, thus cutting off travel in and along Halsted street until the train had gone by. On this occasion it ran the passenger train at a high and dangerous rate of speed over this intersection without closing the gates. Nor did it then notify the travelling public in any other way that the crossing was temporarily dangerous.

The public in passing over these railway tracks and the Grand Trunk in running its trains over Halsted street were in the exercise of an equal right. The rate of speed at which a train may pass over a street crossing must conform to the safety of the public while in the proper and careful use of the highway. In running a train through a city, where the street crossings are on the grade of the railway tracks, independent of any ordinance or statute governing the rate of speed, the question whether or not the speed of the train, all the circumstances being considered, was such as constituted negligence, is one of fact, which should be submitted to the jury. C. & A. Ry. Co. v. Engle, 84 Ill., 398; E. J. & E. Ry. Co. v. Raymond, 148 Ill., 249; Boyd v. C. B. & Q. Ry. Co., 103 Ill. App., 204, and cases cited.

When the X-ray photographs were offered in evidence the objection interposed by counsel for the Street Railway to the first one was, "because it is not such a thing, I think, as laymen can understand, and that it is simply an indication to him; that it is not competent to—unless it is something that can be understood by the jury, it would not be intelligent or competent." To the offer of the others the only objection interposed was the general objection.

Dr. Dennison, who made the X-ray examination, testifies

that he is a post-graduate physician and surgeon, having practiced his profession for twelve years in the city of Chicago. He further says that he had experience in such matters, was competent to make a correct X-ray photograph, and that the views he presented (the original negatives and the prints therefrom) were correct representations of what they purported to be. This evidence is sufficient to justify the court in ruling that they should be admitted in proof. C. & J. Elec. Ry. Co. v. Spence, 213 Ill., 223. What such photographs tended to show, or not to show, was a fit subject for after examination and arguments.

We have considered the remaining instances in which it is claimed that the court erred in the admission of evidence or in the ruling out of evidence and in none of them do we find reversible error.

Counsel for the Street Railway object to appellee's given instructions Nos. 3 and 4. They are as follows:

"3. The court instructs the jury that so far as consistent with the practical operation of its road, it is the duty of a railroad company to exercise the highest degree of care and caution for the safety and security of passengers while being transported."

"4. Common carriers of persons are required to do all that human care, vigilance and foresight can reasonably do, consistent with the character and mode of conveyance adopted, and the practical prosecution of the business, to prevent accidents to the passengers riding upon their trains."

That these instructions do not exclude the codefendant, the Grand Trunk, to which, under the evidence, they have no application, is a question which does not concern the Street Railway.

These instructions state the law as laid down by our Supreme Court. No. 3 is approved in W. C. Street Ry. Co. v. Kromshinsky, 185 Ill., 93. No. 4 is declared to be a correct statement of the law in Chicago City Ry. Co. v. Bundy, 210 Ill., 47.

The objection to the 5th instruction, which says that the

burden of proof is on the plaintiff, and that if the evidence bearing upon his case "preponderates in his favor, although but slightly, it would be sufficient for the jury to find the issues in his favor," is not well taken. The correctness of this instruction is established in this State. Taylor v. Felsing, 164 Ill., 332; Donley v. Dougherty, 174 Ill., 583; C. C. Ry. Co. v. Fennimore, 199 Ill., 18; C. C. Ry. Co. v. Nelson, 215 Ill., 443.

Given instruction No. 9, relating to the elements which the jury, under the evidence, may consider in estimating appellee's damages is expressly approved in Ill. Cent. Ry. Co. v. Cole, 165 Ill., 337, 339. We do not think that in Cullen v. Higgins, 216 Ill., 84, the Supreme Court intended to lay down a different rule.

The trial of this case was conducted with great earnestness. Counsel for all parties at times both in the examination of witnesses and in argument exceeded the strict rules of propriety. It is difficult to mark a point beyond which counsel may not go in the presentation of his case or in attack upon his adversary, so long as he keeps within the limits of what the evidence reasonably tends to prove. Each case must be judged by itself. Unless the court can see that the remarks objected to were clearly prejudicial to the objecting party, it will not reverse the judgment of the court below for that reason. It was the duty of the learned trial judge, a somewhat difficult task as the record shows, to keep counsel within proper bounds. This duty he attempted to perform, and we are not convinced that he wholly failed in its performance. What counsel for appellee said, which was objected to, does not constitute reversible error. Goldstein v. Smiley, 168 Ill., 444; N. C. St. Ry. Co. v. Anderson, 176 Ill., 637; Schintz v. People, 178 Ill., 327; Com. Elec. Co. v. Rose, 214 Ill., 561.

It is uncertain from the evidence whether the railway tracks lay in 49th street, or upon a private right-of-way lying parallel and adjacent to that street. We do not think that the question is important in this case. Taking the view more favorable for the Grand Trunk, there still remains

ample evidence to justify the jury in finding that company guilty of negligence directly contributing to the injury.

The Grand Trunk complains of the giving of instruction No. 40, tendered by the Street Railway Company and modified by the court so as to include both defendants. It reads:

"The burden of proving negligence rests with the party alleging it, and where a party charges negligence on the part of another as a cause of action, he must prove such negligence by a preponderance of evidence. And in this case, if the jury find that the weight of evidence on the material issues is in favor of either or both of the defendants, then the plaintiff cannot recover as against such one or both of the defendants, and the jury should find such one or both of the defendants not guilty."

The criticism is that it requires, as a condition precedent to a finding for either of the defendants not guilty, that the weight of the evidence should be in favor of either one or both of the defendants.

Is that the meaning of this instruction, or were the jury misled by it? We think that the instruction will not bear the interpretation put upon it by counsel for the Grand Trunk. In the first given instruction the jury were told that "The instructions given to the jury are and constitute one connected body and series, and should be so regarded and treated by the jury; that is to say, they should apply them to the facts as a whole, and not detach or separate any one instruction from any or either of the others." Given instruction No. 5 informed the jury that "the burden of proof is upon the plaintiff, and it is for him to prove his case by a preponderance of the evidence." And in the very instruction now objected to it is repeated that "The burden of proving negligence rests with the party alleging it, and where a party charges negligence on the part of another as a cause of action, he must prove such negligence by a preponderance of the evidence." We think that the jury were not misled by this instruction.

The Grand Trunk objects to the 3rd and 4th instructions,

which are hereinbefore quoted.    The criticism is that these instructions exact from the Grand Trunk the same care towards the passengers of the Street Car Company as the Street Car Company owes to its passengers as a matter of law.

These instructions do not say so in express words.    Nor is it likely that the jury so understood them.    They are abstract statements of the law governing the relation of common carrier and their passengers.    We must credit the jury with common discernment and common sense, and therefore we cannot presume that they found the Grand Trunk guilty under these instructions.    The evidence clearly showed that the relation of carrier and passenger existed between the Street Car Company and appellee, and as clearly showed that it did not exist as to the Grand Trunk and appellee.    If the Grand Trunk feared that the jury might take such an improbable view of these instructions, it could easily have prevented this mistake by an instruction warning them not so to do.    Not having done this, the point is not well taken for the first time upon appeal.

The Grand Trunk further objects that the instructions as given omitted the element of due care upon the part of appellee for his personal safety, and they are therefore erroneous and constitute reversible error.

Appellee could have submitted his case to the jury without instructions had he chosen so to do.    In the absence of instructions upon the whole case or upon any issue therein, it is not the duty of the trial judge to frame an instruction bridging the defect; although he may do this if he wishes. If the attorneys of the Grand Trunk desired to supply this omission on the trial, they had the right to offer an instruction covering the point.    They cannot lie by until they reach this court and here successfully urge that the law given to the jury was insufficient for its guidance.

This is such a defect as is cured by verdict.    Where the plaintiff failed to allege that he was in the exercise of due care, it has been held that the omission was one which could not be urged after verdict.    Ill. Cent. Ry. Co. v. Simmons, 38 Ill., 242.

It is also urged that appellee was in fact negligent, in this, that he sat in the street car reading a newspaper and therefore was not aware of the danger in time to avoid it. It is true that a passenger cannot shut his eyes to obvious danger, and when it comes it is his duty to use reasonable means, the circumstances being considered, to avoid personal injury; but it is not the law that a passenger must be constantly on the lookout for possible dangers whether arising from the negligence of the carrier or that of third persons. In this case had appellee looked he would have seen the north gate raised, the street car passing slowly across the railway tracks preceded by the conductor, and the standing freight train which cut off his view of the approaching train. It is not apparent that had he looked he would have known of the danger before the call of the conductor, "For God's sake stop;" and it was then too late to avoid injury.

We have carefully examined the contentions of the Grand Trunk as to alleged errors in other given instructions, and do not find that reversible error is contained in any of them.

It is not disputed but that appellee was most severely injured. It appears from the preponderance of the evidence that after the accident he was unconscious for ten days; that he was confined to his bed for six weeks, was not able to leave the house for two months, and did not go to his business until after October, 1893; that his left arm is useless and very painful; that since he was hurt he has been unable to ride or to drive; that he is subject to dizziness to such a degree that his personal safety is thereby endangered; that he is a cripple and an invalid; and that such condition is permanent.

The verdict as rendered was very large. Upon the hearing of the motion for a new trial appellee entered a *remittitur* of the greater part of the damages. The learned trial judge, believing that the evidence supported the verdict as thus reduced, entered judgment thereon for the sum of $15,000. The practice of allowing a *remittitur* in actions of *ex delicto* is well settled in this State. N. C. St. Ry. Co. v.

Wrixon, 150 Ill., 532; C. C. Ry. Co. v. Gemmill, 209 Ill., 638.

We think that under the evidence each appellant was clearly guilty of negligence which contributed to the accident, that the trial was fairly conducted, that no reversible error appears in the record, and that the damages as shown by the judgment are not excessive.

We therefore sustain the judgment of the Superior Court in each of these appeals.

*Affirmed.*